# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN T. HARTIGAN,

      Plaintiff,

v.                                                No. CIV 17-0537 RB/GJF

COUNTY OF GUADALUPE, and GUADALUPE
COUNTY SHERIFFS DEPARTMENT, and
SHERIFF MICHAEL LUCERO, in his individual
and representative capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, filed on May 17, 2017. (Doc. 5.) Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will grant in part the Motion as outlined below and order the parties to show cause why Plaintiff's remaining claims should not be remanded to state court.

## I.     Factual and Procedural Background

This case arises from Defendant Sheriff Michael Lucero's alleged discrimination and retaliation against Plaintiff John Hartigan, a former employee of the Guadalupe County Sheriff's Department.

Plaintiff began working at the Guadalupe County Sheriff's Department in June 2014. (Doc. 1-2 (Compl.) ¶ 6.) He received a promotion to the rank of Lieutenant in 2015, but he never received the pay raise he was promised when he was promoted. (*Id.* ¶¶ 7–9.)

On November 4, 2015, Plaintiff's coworker, Deputy Campos, "was involved in a motor vehicle accident which totaled his police issued Tahoe." (*Id.* ¶ 10.) The County later sold the

Tahoe as salvage. (*Id.*) Later that month, "Sheriff Lucero was involved in a motor vehicle accident wherein his police issued Tahoe was damaged." (*Id.* ¶ 11.)

In December 2015, Sheriff Lucero told Plaintiff that Officer Wheeler with the New Mexico State Police was investigating Sheriff Lucero's accident. (*Id.* ¶ 12.) "Sheriff Lucero instructed [Plaintiff] to contact Officer Wheeler and inform him that Deputy Diaz [with the Sheriff's Department] was" also conducting an internal investigation of the accident. (*Id.* ¶ 13.) Plaintiff contacted Officer Wheeler as requested. (*Id.*) In early April 2016, Plaintiff discovered that Deputy Diaz never completed the investigation. (*Id.* ¶ 14.) He contacted Deputy Diaz about the incomplete paperwork, and Deputy Diaz told Plaintiff "that Sheriff Lucero had ordered Deputy Diaz to stop the investigation and not to prepare a report." (*Id.* ¶ 15.) Plaintiff informed Officer Wheeler of this development. (*Id.* ¶ 16.)

During an April 16, 2016 all-staff meeting, Sheriff Lucero "became angry and accused [Plaintiff] and Deputy Campos of being disloyal and" causing a "concerned citizen" to ask whether Sheriff Lucero was intoxicated at the time of his accident. (*Id.* ¶ 17.) Sheriff Lucero threatened to take away Plaintiff's and Deputy Campos's law enforcement certification. (*Id.* ¶ 19.) On April 21, 2016, Sheriff Lucero told Plaintiff he could not attend a training as previously scheduled, because the Sheriff "could no longer invest resources into [Plaintiff] because of his age." (*Id.* ¶ 20.) "Sheriff Lucero had done this in the past but had allowed [Plaintiff] to attend the training if [he] paid for his own attendance despite the fact that younger officers . . . were paid for by the Sheriff[']s Department." (*Id.* ¶ 21.) "On May 9, 2016, Sheriff Lucero served [Plaintiff] with a letter which abolished [Plaintiff's] Lieutenant position . . . and demoted him to Deputy." (*Id.* ¶ 22.)

At some point, Plaintiff also discovered that after Deputy Campos's damaged Tahoe was sold, "Sheriff Lucero had the damaged parts of his police issued Tahoe switched out with non-damaged parts from Deputy Campos'[s] Tahoe, before it was delivered to the new owner." (*Id.* ¶ 13.)

On May 17, 2016, Plaintiff sent a confidential complaint to George Dodge, the Guadalupe County Manager. (*See id.* ¶ 23; Doc. 6-3.) He stated that he was "the victim of retaliatory action . . . for reporting what [he] believed . . . was an unlawful or improper act, to the New Mexico State Police . . . . Specifically, Sheriff Lucero failed to report a crash of his county vehicle in November 2015 and ordered specific actions to continue to conceal the crash." (Doc. 6-3 at 1.) Plaintiff described the incidents alleged in his Complaint and asserted his belief that by reporting to Mr. Dodge, he would "be subject to immediate retaliatory action by Sheriff Lucero." (*Id.* at 4.)

After he sent this letter to Mr. Dodge, Sheriff Lucero continued to harass and retaliate against Plaintiff. (Compl. ¶ 24.) Plaintiff filed a Charge of Discrimination form with the EEOC (and cross-filed it with the New Mexico Department of Workforce Solutions, Human Rights Bureau) on June 9, 2016. (*Id.* ¶ 25.) On June 20, 2016, Sheriff Lucero sent a memorandum to Plaintiff and cc'd George Dodge regarding "excess electronics/electrical equipment" in Plaintiff's department-issued vehicle and instructed Plaintiff to remove the items. (*Id.* ¶ 26.) Plaintiff asserts that while other deputies had similar equipment in their vehicles, no other deputy received this memo. (*Id.* ¶ 27.) On June 27, 2016, Plaintiff "realized that Sheriff Lucero had been improperly reporting [Plaintiff's] work hours for the previous three . . . pay periods . . . ." (*Id.* ¶ 28.) Plaintiff had "to use annual leave to compensate for the lost time." (*Id.*) Plaintiff eventually resigned his position because of the harassment and retaliation. (*Id.* ¶ 29.)

Plaintiff filed a complaint in the Fourth Judicial District Court, County of Guadalupe, on April 4, 2017, alleging the following counts: (1) violation of New Mexico's Whistleblower Protection Act (NMWPA), N.M. Stat. Ann. § 10-16C-1 through -6 (1978)[1]; (2) discrimination on the basis of age[2] in violation of the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. § 28-1-7; (3) constructive discharge; (4) infliction of emotional distress, pursuant to the New Mexico Tort Claims Act (NMTCA), N.M. Stat. Ann. § 41-4-12 (1978); and (5) negligent hiring, training, and supervision, pursuant to § 41-4-12. (*See* Compl. ¶¶ 30–55.) Defendants removed the case to this Court on May 10, 2017. (Doc. 1.)

## III.    Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.)

---

[1] Plaintiff references only the New Mexico Whistleblower's Protection Act in both his Complaint and his Response brief. (*See* Compl. ¶ 34; Doc. 6 at 2–4.) Defendants reference Title VII's anti-retaliation provision in their Notice of Removal, but they do not mention or rely on Title VII in their Motion to Dismiss. (*See* Doc. 1 at 1 (citing 42 U.S.C. § 2000e-3(a)).)

[2] Plaintiff does not specifically reference a federal statute for his age discrimination claim in either his Complaint or his Response brief (*see* Compl.; Doc. 5), but he does mention the Age Discrimination in Employment Act of 1967 (ADEA) in the Charge of Discrimination form he filed with the EEOC (*see* Doc. 5-1).

## IV.     Discussion

Defendants allege that Plaintiff's Complaint is subject to dismissal on the following bases: (1) Plaintiff's age discrimination claim is time-barred; (2) Plaintiff's WPA claim is barred by New Mexico common law; (3) Plaintiff may not state a claim against the sheriff; (4) Plaintiff fails to state a claim for constructive discharge; (5) Plaintiff fails to state a claim for either infliction of emotional distress or negligent hiring, training and supervision; and (6) the Sheriff's Department is not a viable defendant for any claim. (*See* Doc. 5.)

### A.     Plaintiff's age discrimination claim is time-barred.

Defendant alleges that Plaintiff's age discrimination claim (Count 2) is time-barred. (Doc. 5 at 1.) Plaintiff filed a Charge of Discrimination form with the EEOC on June 9, 2016, alleging that he was "discriminated and retaliated against because of [his] age (56) in violation of the Age Discrimination in Employment Act of 1967, as amended." (Doc. 5-1.) Plaintiff listed his address on the form as P.O. Box 64, Newkirk, New Mexico 88431. (*Id.*) The EEOC issued its Dismissal and Notice of Rights on October 13, 2016 and sent it to the same address in Newkirk, New Mexico. (Doc. 5-2 at 1.) At some point between June 9, 2016, and April 4, 2017, the date on which Plaintiff filed his lawsuit, Plaintiff changed his mailing address to P.O. Box 291, Fort Sumner, New Mexico 88119. (*See* Docs. 6 at 1; 6-1 at 3; 6-2 at 3.) Plaintiff received his EEOC Notice on January 10, 2017. (*See* Docs. 6 at 1; 6-1 at 3; 6-2 at 3.)

"Unless a Title VII or ADEA plaintiff files suit within ninety days of receiving a right-to-sue letter from the EEOC, [he] is foreclosed from bringing suit on the allegations made in [his] EEOC claim." *Guevara v. Best W. Stevens Inn, Inc.*, 78 F. App'x 703, 704 (10th Cir. 2003) (citing 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e)). The same is true for age discrimination claims filed pursuant to the NMHRA. *See Herrera v. Las Cruces Pub. Sch.*, 695 F. App'x 361

(10th Cir. 2017) (construing the "date of service" language in N.M. Stat. Ann. § 28-1-13(A) to mean the "date of mailing"); *see also* N.M. Stat. Ann. § 28-1-13(A) ("A person aggrieved by an order of the commission may obtain a trial de novo by filing a notice of appeal . . . within ninety days from the date of service of the commission's order").

Here, Plaintiff filed his lawsuit 173 days after the EEOC issued the Dismissal and Notice of Rights. Plaintiff argues that because he did not receive the EEOC's Notice by mail until January 10, 2017, he had ninety days from that date to file his lawsuit, and the April 4, 2017 filing was timely. (Doc. 6 at 1.) The law is not on Plaintiff's side.

Plaintiff is essentially asking the Court to equitably toll the requisite 90-day period. "Equitable tolling is a nonstatutory tolling theory which suspends a limitations period." *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66, *as corrected* (N.M. June 9, 2004) (citation omitted). "Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." *Id.* (citing *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984)). "However, where a plaintiff fails to receive notice of the right to sue through his or her own fault, equitable tolling does not apply." *Id.* (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.")). "In *Hunter v. Stephenson Roofing Inc.*, 790 F.2d 472, 475 (6th Cir. 1986), the Sixth Circuit Court of Appeals held that equitable tolling is not available to a Title VII plaintiff who fails to notify the EEOC of a change in address, and does not receive notice of the right to sue as a result." *Id.* "Relying on precedent and federal law, the court said that a plaintiff's burden of notifying the EEOC of a change in address is both minimal and reasonable." *Id.* (citing *Hunter*, 790 F.2d at 475).

Plaintiff makes no argument that would excuse him from his responsibility to notify the EEOC of his change of address. The doctrine of equitable tolling does not apply to Plaintiff's age discrimination claim in Count 2, and the Court will grant Defendants' Motion on this issue.

### B. Plaintiff's claim under the NMWPA survives.

To state a prima facie case under the NMWPA, a plaintiff must establish "three elements: (i) the employee engaged in a protected disclosure; (ii) the employer took an adverse employment action against the employee; and (iii) a causal connection exists between the protected disclosure and the adverse action." *Walton v. N.M. State Land Office*, 113 F. Supp. 3d 1178, 1199 (D.N.M. 2015) (citing N.M. Stat. Ann. § 10-16C-3) (subsequent citation omitted). Defendants argue that Plaintiff cannot establish the first or third elements. (Doc. 5 at 2–4.)

### 1. Plaintiff engaged in a protected disclosure.

A protected disclosure, as defined in the first element of a prima facie case, occurs when an employee:

> A. communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;
> B. provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or
> C. objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10-16C-3; *see also Walton*, 113 F. Supp. 3d at 1199–1200. The parties agree that Plaintiff's conduct here falls under section A—Plaintiff communicated information about Sheriff Lucero's conduct that Plaintiff believed constituted an unlawful or improper act to Officer Wheeler of the New Mexico State Police.[3] (Docs. 5 at 2–3; 6 at 2.)

---

[3] Plaintiff also contends that, specific to his report of Sheriff Lucero's misconduct in swapping out the non-damaged vehicle parts for his police-issued Tahoe, Plaintiff's conduct falls under section 10-16C-3(C). (Doc. 6 at 2–3.) Such misconduct would also, however, fall under section 10-16C-3(A)(1) or (2), as the Sheriff's actions may have

The NMWPA defines an "unlawful or improper act" as:

a practice, procedure, action or failure to act on the part of a public employer that:

(1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;
(2) constitutes malfeasance in public office; or
(3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

N.M. Stat. Ann. § 10-16C-2(E). Defendant argues that the conduct Plaintiff complained about—both Sheriff Lucero's "non-investigation" of the accident and Sheriff Lucero's retaliatory behavior—do not rise to the level of "unlawful or improper acts." (Doc. 5 at 3.) The Court does not agree. Plaintiff has pled facts sufficient to show that Sheriff Lucero's actions in both refusing to investigate his own accident and in misleading Officer Wheeler about the internal investigation may at least rise to the level of "malfeasance."[4] Because Plaintiff reported Sheriff Lucero's actions to Officer Wheeler, he "communicate[d] to . . . a third party information about an action . . . that [he] believe[d] in good faith constitute[d] an unlawful or improper act" under § 10-16C-3(A).

And while Plaintiff's age discrimination claim is time-barred, Plaintiff has pled facts sufficient to show that Sheriff Lucero may have discriminated against him on the basis of age, an improper act, at least, and a violation of state and federal law, at most. Plaintiff's report of that conduct (as well as the other alleged misconduct) to George Dodge also falls within the ambit of the statute. *See Walton*, 113 F. Supp. 3d at 1201 (finding that the plaintiff engaged in protected conduct by submitting written complaints to a superior about what plaintiff believed was harassment).

---

violated state law or at least constituted malfeasance. The Court finds that section 10-16C-3(A) is the more appropriate section for Plaintiff's claim.
[4] Malfeasance is defined as "wrongdoing or misconduct especially by a public official." *Malfeasance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/malfeasance.

### 2. Sheriff Lucero took an adverse employment action.

Plaintiff has pled facts sufficient to establish that Sheriff Lucero took adverse employment actions against him. At a minimum, Plaintiff has alleged facts to show that Sheriff Lucero: (1) abolished Plaintiff's position and demoted him; (2) threatened Plaintiff with the loss of his law enforcement certification; (3) took away a funded training opportunity that Plaintiff had previously scheduled; and (4) instructed Plaintiff to remove "excess" electronics and other equipment from Plaintiff's patrol vehicle, even though other deputies had the same equipment and were not made to remove it.

### 3. A causal connection exists between the protected disclosure and the adverse action.

To satisfy the third prong, Plaintiff "has the burden to establish a causal connection under the NMWPA." *See Walton*, 113 F. Supp. 3d at 1201 (citing *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1293 (10th Cir. 2013)). Defendants argue that Plaintiff has neither "tied the alleged report to any retaliatory act" nor "allege[d] that the Sheriff or any other defendant became aware that plaintiff informed the [New Mexico State Police] that the department was not investigating the alleged accident." (Doc. 5 at 3.)

"To establish that a causal connection exists," Plaintiff "may proffer evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *See Walton*, 113 F. Supp. 3d at 1197 (analyzing claims for retaliation under both Title VII and the New Mexico Human Rights Act) (quotations and internal quotation marks omitted). Plaintiff argues that two specific facts connect his reports with Sheriff Lucero's retaliation. First, Plaintiff notes that within approximately two weeks of the day he told Officer Wheeler that Sheriff Lucero had ended the investigation, Sheriff Lucero became angry at

Plaintiff and Deputy Campos, accused them of being disloyal and of causing a "concerned citizen" to ask whether Sheriff Lucero was intoxicated at the time of his accident, and threatened to take away their law enforcement certification. (Doc. 6 at 3.) In other words, Plaintiff insinuates that Sheriff Lucero found out he contacted Officer Wheeler. Second, Plaintiff maintains that Sheriff Lucero's action in forcing Plaintiff to remove equipment from his car was obviously retaliation after Sheriff Lucero discovered that Plaintiff sent a complaint to George Dodge and/or filed a Charge of Discrimination with the EEOC.[5] (*Id.*)

The Court finds that Plaintiff has demonstrated sufficient circumstantial evidence of a causal connection here due to the proximity in time between Plaintiff's report of Sheriff Lucero's misconduct and Sheriff Lucero's retaliatory actions. Sheriff Lucero made accusations and threats to Plaintiff approximately two weeks after Plaintiff reported the information about the halted investigation to Officer Wheeler. Sheriff Lucero later demanded that Plaintiff remove equipment from his patrol vehicle less than two weeks after Plaintiff filed a Charge of Discrimination form with the EEOC. Plaintiff's allegations are sufficient to survive Defendants' Motion to Dismiss. The Court will deny the Motion with respect to Count 1.

### C. Plaintiff may not bring a claim under the WPA against Sheriff Lucero in his individual capacity.

Defendants argue that Plaintiff may not bring his WPA claim against Sheriff Lucero and ask the Court to dismiss the claim against the Sheriff with prejudice. (Doc. 5 at 4.) Plaintiff acknowledges that the New Mexico Supreme Court held in *Flores v. Herrera*, 384 P.3d 1070 (N.M. 2016), "that the WPA does not create a right of action against a current or former state officer in his or her personal capacity." *Flores*, 384 P.3d at 1073. (*See also* Doc. 6 at 4.) Plaintiff

---

[5] The EEOC website explains that "[w]hen a charge is filed against an organization, EEOC will notify the organization within 10 days." "What You Can Expect After a Charge is Filed," U.S. EEOC, available at https://www.eeoc.gov/employers/process.cfm (last visited Oct. 19, 2017).

may state a claim under the WPA against Sheriff Lucero in his official capacity. *Flores*, 384 P.3d at 1074 ("when the Legislature created liability in a 'public employer,' § 10-16C-4(A), it created a right of action that runs against a state officer only in his or her official capacity"). The Court will dismiss with prejudice Plaintiff's claim under the WPA against Sheriff Lucero in his individual capacity.

### D. Plaintiff has pled facts sufficient to establish constructive discharge.

To state a constructive discharge claim, Plaintiff "must show that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign . . . ." *Littell v. Allstate Ins. Co.*, 177 P.3d 1080, 1090 (quoting *Ulibarri v. N.M. Corr. Acad.*, 131 P.3d 43, 49 (N.M. 2006) (quoting *Gormley v. Coca-Cola Enters.*, 109 P.3d 280, 282 (N.M. 2005) (internal quotation omitted) (alteration in original))). "Essentially, [he] must show that [he] had no other choice but to quit." *Gormley*, 109 P.3d at 283 (quoting *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (internal quotation and citations omitted) (alteration in original)). "'The bar is quite high' for proving constructive discharge." *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal citation omitted)).

Defendants argue Plaintiff's "constructive discharge" claim should be dismissed because Plaintiff has not alleged facts sufficient to show that Sheriff Lucero made working conditions intolerable. (Doc. 5 at 4–5.) The New Mexico Supreme Court listed "[e]xamples of adverse employment actions that rise to the level of constructive discharge[,]" including

> a humiliating demotion[;] extreme cut in pay[;] . . . transfer to a position in which [the employee] would face unbearable working conditions[;] . . . an employer's threat of being fired; overt pressure to resign and accept early retirement; dramatic cut in pay; and retaliatory measures (e.g., discrimination, unreasonable criticism, involuntary transfer).

*Gormley*, 109 P.3d at 283 (quotation and citations omitted).

Here, the facts show that Plaintiff was demoted, but he does not claim the demotion was humiliating. He never received a promised pay raise, but he does not claim that he had an extreme cut in pay. Sheriff Lucero yelled at him in front of a group of people, but only on one occasion. He was not transferred. He was not pressured to resign or accept early retirement.

Plaintiff's strongest case lies in the facts that show discriminatory and retaliatory treatment. First, Sheriff Lucero told Plaintiff he could not attend a training because the Sheriff "could no longer invest resources into [Plaintiff] because of his age." (Compl. ¶ 20.) In the context of a constructive discharge claim under the ADEA, the Tenth Circuit has held that "[a] finding of constructive discharge must not be based only on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable." *James v. Sears Roebuck & Co., Inc.*, 21 F.3d 989, 992–93 (10th Cir. 1994) (citation omitted); *see also Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280, 284 (10th Cir. 2009) (internal quotation omitted)). "Examples of 'aggravating factors' might include a perceived demotion or reassignment to a job with lower status or lower pay, depending on the individual circumstances of each case." *Premratananont v. S. Suburban Park & Recreation Dist.*, No. 97-1090, 1998 WL 211543, at *2 (10th Cir. Apr. 30, 1998) (citing *James*, 21 F.3d at 993). Here, Plaintiff asserts that after Sheriff Lucero told him he would not invest in training due to Plaintiff's age, Sheriff Lucero then abolished Plaintiff's Lieutenant position and demoted him to Deputy. (Compl. ¶ 22.) One month after his demotion, Plaintiff filed a Charge of Discrimination form with the EEOC. Less than two weeks after he filed his EEOC complaint, Sheriff Lucero forced him to take equipment out of his patrol vehicle.

It is a close call, but viewing the facts together in a light most favorable to Plaintiff, and considering that these incidents all happened within a span of approximately three months, the Court finds that Plaintiff has alleged facts sufficient to show that Sheriff Lucero's conduct created "working conditions so intolerable, when viewed objectively, that a reasonable person would [have been] compelled to resign . . . ." *Littell*, 177 P.3d at 1090 (quotation omitted).[6] The Court will deny Defendants' Motion to Dismiss on this issue.

### E. The Court will deny Defendant's Motion with respect to Count 5.

The NMTCA "provides that '[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978.'" *Trujillo v. Salazar*, No. CIV-04-0689 JB/WDS, 2006 WL 1228827, at *5 (D.N.M. Mar. 1, 2006) (quoting N.M. Stat. Ann. § 41-4-4(A) (1978)). "A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of

---

[6] Establishing constructive discharge is but one step on the path to recovering for a wrongful or retaliatory discharge claim. "Constructive discharge is not an independent cause of action, such as a tort or a breach of contract. Instead, constructive discharge is a doctrine that permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley*, 109 P.3d at 282 (citing *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1030 (Cal. 1994)). "An employee who resigns from employment must prove constructive discharge as part of establishing a wrongful termination." *Id.* (citing *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 472 (4th Cir. 2002)); *Turner*, 876 P.2d at 1030 (quoted in *Gormley*, 109 P.3d at 282) ("Even after establishing *constructive* discharge, an employee must independently prove [either] a breach of [an express or implied employment] contract or [a] tort in connection with employment termination in order to obtain damages for *wrongful* discharge.")

Plaintiff briefly discusses wrongful discharge relative to the NMWPA in his Response brief. (Doc. 6 at 4–5.) To make a claim for retaliatory discharge, which is only available to at-will employees, Plaintiff would need to "(1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he . . . acted in furtherance of the clearly mandated public policy; and (3) show that he . . . was terminated as a result of those acts." *Sherrill v. Farmers Ins. Exch.*, 374 P.3d 723, 727 (N.M. Ct. App. 2016) (citations omitted); *see also Silva v. Am. Fed. of State, Cty., & Mun. Emp'ees*, 37 P.3d 81, 83 (N.M. 2001) (finding that "the tort of retaliatory discharge would not extend as a matter of logic to employees who are not at-will"). Plaintiff does not make any allegations in his Complaint about whether he was employed pursuant to a contract or was an at-will employee. Plaintiff does not identify any public policy in Count 3. More importantly, the parties did not fully or explicitly brief the issue of whether Plaintiff brought a claim for wrongful or retaliatory discharge. (*See* Docs. 5, 6.) Consequently, the Court analyzes Count 3 only as a state common law claim for "constructive discharge." The Court does not make any finding on a claim for wrongful or retaliatory discharge.

action fits within one of the exceptions listed in the NMTCA." *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1193 (D.N.M. 2013) (citing *Begay v. New Mexico*, 723 P.2d 252, 256 (N.M. Ct. App. 1985) ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act.") (internal citation omitted), *rev'd on other grounds by Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986)).

As a threshold matter, the Court notes that Plaintiff fails to identify the specific section of the NMTCA under which he is bringing his claims in Counts 4 and 5. He mentions the NMTCA generally in paragraph 1, but he never specifies which statutory exception he relies on. (Compl. ¶¶ 1, 47–55.) Plaintiff discusses § 41-4-12 in his Response to Defendants' Motion (Doc. 6 at 5–7); thus, the Court will construe his claims in Counts 4 and 5 as brought pursuant to § 41-4-12.

"Section 41-4-12 of the NMTCA provides a waiver of immunity for enforcement officers' negligence or intentional conduct in causing certain specified torts." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1142 (D.N.M. 2012) (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1096 (10th Cir. 2006) (internal citations omitted)). This section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12. To state a claim under § 41-4-12, "a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Glover*, 899 F. Supp. 2d at 1142 (quoting *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316 (N.M. 1996)).

Plaintiff asserts in Count 5 that his injuries arose from Defendants' violations of his statutory rights secured under New Mexico law—both by the NMWPA and NMHRA. Defendants argue that there is no waiver in § 41-4-12 for NMWPA claims and that Plaintiff has failed to state a claim under the NMHRA. (Doc. 5 at 6.) The parties failed to cite any relevant authority on the issue of whether the NMWPA or NMHRA secure a right "for the violation of which Section 41-4-12 provides an independent waiver of immunity." *See Cal. First Bank v. New Mexico*, 801 P.2d 646, 655 (N.M. 1990). In their reply brief, Defendants make the conclusory argument that Plaintiff did not allege facts sufficient to support the claim of negligent hiring, training, and supervision, but the parties did not brief this issue. The Court will deny Defendant's Motion with respect to Count 5.

### F.      The Court will dismiss Plaintiff's claim for IIED.

The Court finds that even if Plaintiff has properly brought a claim for IIED under § 41-4-12, he has not alleged facts sufficient to maintain such a claim. To demonstrate an IIED claim, the New Mexico Supreme Court requires a plaintiff to show: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Baldonado v. El Paso Nat. Gas Co.*, 176 P.3d 286, 294 (N.M. Ct. App. 2006), *aff'd*, 176 P.3d 277 (N.M. 2008) (quoting *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342 (N.M. 2001) (internal quotation omitted)). "As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1222 (10th Cir. 2007) (quoting *Trujillo*,

41 P.3d at 343 (internal quotation omitted)). "When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court." *Id.* (quoting *Trujillo*, 41 P.3d at 343 (internal quotation and citation omitted)).

Here, Plaintiff claims that Sheriff Lucero's conduct was extreme and outrageous. The Court does not agree. "The Restatement describes extreme and outrageous conduct as that which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Trujillo*, 41 P.3d at 342–43 (quoting Restatement (Second) of Torts § 46 cmt. d (1965); citing *Stieber v. Journal Publ'g Co.*, 901 P.2d 201, 205 (N.M. Ct. App. 1995); UJI 13–1628 NMRA 2001 ("Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person.")).

The Tenth Circuit, analyzing Colorado law, examined a claim for IIED in *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 384–85 (10th Cir. 1988). In *Grandchamp*, plaintiffs claimed that the defendant discriminated against them on the basis of age and sought damages for IIED. *Id.* at 382. The Tenth Circuit noted that under Colorado law, "discharge from employment, without more, is not outrageous conduct." *Id.* at 384–85 (citations omitted). Instead, it is "the *manner* of the discharge, and the employer's conduct, [that] is critical to a finding of outrageous conduct." *Id.* at 385 (citations omitted). The *Grandchamp* court found insufficient evidence to show outrageous conduct, even though the plaintiffs succeeded on their age discrimination claim. *Id.* at 385–86. If the plaintiffs "were allowed to recover under a theory of outrageous conduct for [defendant's] actions," the court mused, "then every discrimination claim—based on age, race, national origin, or sex—would also state a claim for outrageous conduct." *Id.* at 385. *See also Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991)

(noting that where an employer constructively discharges an employee by creating "unpleasant and onerous work conditions designed to force an employee to quit," even though "this sort of conduct often rises to the level of illegality, except in the *most* unusual cases it" does not "constitute[] 'extreme and outrageous' conduct").

The New Mexico Supreme Court has also "recognize[d] that only in extreme circumstances can the act of firing an employee support a claim of intentional infliction of emotional distress." *Trujillo*, 41 P.3d at 343 (quotation omitted). The Court finds that Plaintiff has not shown that the conduct here was extreme or outrageous, even though it may have been unlawful. Sheriff Lucero demoted Plaintiff via a letter; the manner of this demotion was not outrageous. Sheriff Lucero yelled at Plaintiff, forced him to take equipment out of his vehicle, refused to pay for Plaintiff to attend a training, and improperly reported his work hours, but none of this heavy-handed behavior, either singly or in combination, rises to the level of extreme or was beyond the bounds of decency as defined by our courts.

The Court finds Plaintiff's IIED claim must also fail because he does not allege facts sufficient to establish that the emotional distress he experienced was severe. *See Trujillo*, 41 P.3d at 343. "Severe emotional distress means that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Id.* (quotations omitted). "In other words, the distress must be 'so severe that no reasonable [person] could be expected to endure it.'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. j). The New Mexico Supreme Court has found that a plaintiff did not provide sufficient evidence to show severe emotional distress where he "felt 'lousy' and depressed[,]" had Prozac prescribed, slept long hours, and had "erratic eating habits . . . ." *Id.* In *E.E.O.C. v. Univ. of Phx., Inc.*, 505 F. Supp. 2d  1045, 1162 (D.N.M. 2007), the court found the plaintiff did not establish severe

distress where she alleged that the defendant's conduct "made her feel like vomiting, caused . . . nightmares, caused her to lose sleep, led her to seek medical assistance [and] . . . take some sample medications her physician provided, and prevented her from caring for her children for a month, because she was too tired and emotionally distracted to do so." *E.E.O.C.*, 505 F. Supp. 2d at 1062 (citation omitted).

Here, Plaintiff asserts that he experienced "sever[e] emotional distress, including but not limited to, public ridicule, degradation, anxiety, embarrassment, loss of sleep, fear for his personal safety, and loss of standing within the community." (Compl. ¶ 49.) The Court notes that Plaintiff failed to allege facts to demonstrate why or how he feared for his personal safety or lost standing within the community; thus, under *Iqbal*, the Court does not consider those two allegations. Accepting the remainder of the allegations in his Complaint as true, Plaintiff has not alleged facts sufficient to show that he suffered distress that "no reasonable person could be expected to endure." *See Trujillo*, 41 P.3d at 343 (quotation omitted). Ultimately, the Court finds Plaintiff has not alleged facts sufficient to maintain a claim for IIED. The Court will grant Defendant's Motion with respect to Count 4.

### G. The Sheriff's Department is not a viable defendant.

Plaintiff acknowledges that the Sheriff's Department is not a suable entity. (*See* Docs 5 at 6–7; 6 at 7.) The Court will, therefore, dismiss all claims against the Guadalupe County Sheriff's Department. The Court recognizes that although Plaintiff named the "County of Guadalupe" as a Defendant, he may have intended to bring his claims against the "Board of County Commissioners of the County of Guadalupe." (*See* Compl.; Doc. 6 at 7.)

**V.     The Court will order the parties to show cause why this case should not be remanded.**

Plaintiff states in his Complaint that he brings his claims "pursuant to § 41-4-1, et seq[.], NMSA 1978, Notice of Claims; § 28-1-1, et seq[.], NMSA 1978, Human Rights Act, and § 10-16C-1 et seq[.,] NMSA 1978, Whistleblower Protection Act; the Constitution of the United State [sic]; the New Mexico Constitution; and the laws of the State of New Mexico." (Compl. ¶ 1.) Defendants removed Plaintiff's lawsuit from the Fourth Judicial District Court to this Court pursuant to 28 U.S.C. § 1331. (*See* Doc. 1.)

"[T]o find jurisdiction under 28 U.S.C. § 1331, two conditions must be satisfied. First, a question of federal law must appear on the face of plaintiff's well-pleaded complaint." *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003), *opinion reinstated in part*, 440 F.3d 1227 (10th Cir. 2006) (citing *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001)). "Second, plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" *Id.* (quoting *Rice*, 260 F.3d at 1245 (internal citation omitted)).

In their Notice of Removal, Defendants asserted that "plaintiff's action, upon information and belief, arises out of alleged gender based discrimination and retaliation under 42 U.S.C. Section 2000 E-2(A)(a) [sic] et seq." (Doc. 1 at 1.) Defendants also averred that the Court has federal-question jurisdiction because "the cause arises under the Constitution and laws of the United States brought pursuant to 42 U.S.C. § 1983 or other applicable federal statute." (*Id.* (citing Count 2, Plaintiff's age discrimination claim).) The Court notes that Defendants' reference to a gender-based discrimination claim was plainly a mistake, as Plaintiff does not

make such a claim. To the extent Plaintiff brought his age discrimination claim pursuant to the ADEA, the Court has found his claim is time-barred. Defendants cite to Title VII in their Notice of Removal, presumably with respect to Plaintiff's claim for retaliation under the NMWPA, yet both parties reference only state law in their briefs. More importantly, other than his reference to "the Constitution of the United State [sic]" in paragraph 1 of his Complaint, Plaintiff does not mention Title VII, 42 U.S.C. § 1983, or any other federal statutory or constitutional provision in the remainder of his Complaint or in his Response brief. Having read Plaintiff's Complaint and considered the briefs, it appears to the Court that there is no further basis for either federal-question or diversity jurisdiction.

Having dismissed Count 2, the Court is inclined to remand Plaintiff's remaining state claims. In order to "afford the parties a full and fair opportunity to litigate the question of subject-matter jurisdiction[,]" *Nicodemus*, 318 F.3d at 1235, the Court will require the parties to show cause why this case should not be remanded for lack of subject matter jurisdiction. Defendants shall file a response to this Order to Show Cause no later than Wednesday, November 1, 2017. Plaintiff may file a reply to Defendants' response no later than Wednesday, November 8, 2017.

**VI.     Conclusion**

The Court rules as follows:

Count 1: Plaintiff has pled sufficient facts to state a claim under the NMWPA. Defendants' Motion is denied with respect to Count 1. However, the Court will dismiss with prejudice the NMWPA claim against Sheriff Lucero in his individual capacity. The claim against Sheriff Lucero in his official capacity survives.

Count 2: The doctrine of equitable tolling does not apply to Plaintiff's age discrimination claim, and the Court will grant Defendants' Motion with respect to Count 2.

Count 3: Plaintiff has alleged facts sufficient to show a state common law constructive discharge claim, and the Court will deny Defendants' Motion with respect to Count 3.

Count 4: Plaintiff has not alleged facts sufficient to maintain a claim for IIED, and the Court will grant Defendant's Motion with respect to Count 4.

Count 5: Because the parties did not adequately brief this issue, the Court will deny Defendant's Motion with respect to Count 5.

Claim against the Sheriff's Department: The Court will dismiss with prejudice all claims against the Sheriff's Department.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 5) is **GRANTED IN PART** as described herein;

**IT IS FURTHER ORDERED** that no later than November 1, 2017, Defendants must file with the Court a response to this order showing cause why Plaintiff's remaining claims should not be remanded; Plaintiff shall file a response no later than November 8, 2017.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**